IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| EDWARD MARION JONES, # 899539 | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-03-426 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| DIRECTOR OF TDCJ-CID | § | |

**<u>REPORT AND RECOMMENDATION</u>**

Before the Court is the Petition for a Writ of Habeas Corpus of Edward Marion Jones, a prisoner in the Texas Department of Criminal Justice--Correctional Institutions Division ("TDCJ-CID"). Respondent filed an Answer seeking dismissal with prejudice of Petitioner's claims. Petitioner has responded. Having carefully considered the Petition, the parties' motions and briefs, and the state court records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 2241 and 2254. The State has custody of Petitioner pursuant to a judgment and sentence entered by the 23rd District Court of Brazoria County, Texas on November 18, 1999. Petitioner was indicted and charged with aggravated sexual assault of a child and indecency with a child. Petitioner pled "not guilty" to the charges. The case was tried to a jury. The jury, after hearing all the evidence, found Petitioner guilty of the offenses alleged in the indictment. Petitioner was sentenced to fifteen (15) years confinement for aggravated sexual assault of a child and to ten (10) years confinement, probated for ten years, for indecency with a child.

Petitioner appealed his conviction. The court of appeals affirmed his conviction on July 12, 2001. *Jones v. State*, No. 14-99-01382-CR (Tex.App. [14th Dist.], 2001, pet ref'd), 2001 WL

778023.  He filed a Petition for Discretionary Review ("PDR"), which was refused by the Texas Court of Criminal Appeal on January 9, 2002.

On November 15, 2002, Petitioner filed a writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure.  The Court of Criminal Appeals denied it without written order on February 26, 2003.  Petitioner filed the instant writ in federal court on May 20, 2003.[1]  In his federal writ, Petitioner states the following grounds for relief:  (1) he was denied a fair trial by the trial court;  (2) he was denied a fair and proper grand jury proceeding and fair trial by the State;  (3) he was denied effective assistance of counsel at trial; and (4) he was denied effective assistance of counsel on appeal.

A.  Claims that Trial Court Denied Him Fair Trial

Petitioner maintains that the trial court committed numerous errors, which effectively denied him a fair trial.  To prevail on claims of trial court error, a petitioner must establish that the error did more than merely affect the verdict.  *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). Instead, he must establish that it rendered the trial, as a whole, fundamentally unfair.  *Id.*  An error by the trial court renders the trial fundamentally unfair only if there is a reasonable probability that the verdict would have been different had the trial been conducted properly.  *See Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988).  Applying the federal harmless error standard, the error  must have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (*quoting*, *Kotteakos v. United States*, 328 U.S. 750, 776 (1946).  Accordingly, a petitioner is not entitled to federal habeas relief unless he can establish that the trial court error resulted in actual prejudice.  *See id.*

---

[1] *See* Magistrate Judge's Order signed February 9, 2004 (Instrument No. 9).

2

In claims one through three, Petitioner contends that before or during *voir dire*, the trial court denied him a fair trial for the following reasons:  (1) the court exhibited a personal bias against him and revealed to the jury panel its  "personalized interest" in the case (Pet'r Memo. at 4); (2) the court improperly set a tone by its comments and examples (Pet'r Memo. at 4); and (3) the court improperly permitted the State to "bolster upcoming witnesses and evidence" with unsubstantiated facts," implied that the alleged acts were committed by Petitioner, and further suggested that any testimony from Petitioner would not be credible (Pet'r Memo. at 4).  Petitioner can obtain relief by showing that "the judge was influenced by interests apart from the administration of justice and that this bias or prejudice resulted in rulings based on other than facts developed at trial."  *Nethery v. Collins*, 993 F.2d 1154, 1157 (5th Cir. 1993), *cert. denied*, 511 U.S. 1026 (1994).  Petitioner fails to make this showing.[2]  Furthermore, contrary to his charges, this Court, having reviewed the trial transcript, finds it to be completely devoid of any support for his charges.  Petitioner's first, second, and third claims are without merit.

In his fourth claim, Petitioner appears to generally assert the trial court denied him a fair trial by making "comments and queries which exhibited its intent to rush the trial proceedings (Pet'r Memo. at 4, 7).  Petitioner's claim is not supported in the trial transcript and equally unfounded.  Accordingly, this claim must be rejected.

---

[2] In his writ, Petitioner tosses around the phrase "semi-political issue" in an apparent attempt to suggest impropriety by the trial court.  However, there is no basis for his contentions.  The record reflects that when the State attempted to elicit testimony from the victim's mother about how many times the case had been set for trial and then reset, defense counsel objected, and the trial court sustained the objection.  The trial court did so explaining that the State was not entitled to an inference that there was any delay resulting from either the State or the defense and, to allow the question, would inappropriately raise a "semi-political issue" regarding the judicial system.

3

In his fifth claim, Petitioner contends the trial court denied him a fair trial by allowing unadjudicated extraneous offenses, which occurred 27 years ago, to be introduced by the State. Petitioner also contends the trial court erred in failing to inform the jury that the extraneous offenses were "alleged" and "unadjudicated" (Pet'r Memo. at 4-5; Trial Transcript ("T.T."), Vol. 4 at 168:6-174:24).   In reviewing federal writs of habeas corpus, the law is clear that federal courts do not "sit to review the mere admissibility of evidence under state law" or errors in the application of state law. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999). Instead, a federal court is limited to deciding whether the conviction violated the Constitution or statutes of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).   Evidentiary rulings of a state court do not warrant federal habeas corpus relief unless the errors are so extreme they constitute a denial of fundamental fairness under the Due Process Clause. *Little v. Johnson*, 162 F.3d at 862; *see also Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992), *cert. denied*, 508 U.S. 960 (1993) (errors in state law, including evidentiary errors, are generally not cognizable in federal habeas corpus).   "Thus, only when wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be granted." *Little v. Johnson*, 162 F.3d at 862. Here, Petitioner has not established that the admission of this evidence, for which proper notice was given by the State, was wrongfully admitted. (T.T., Vol. 4 at 168:6-174:24).   The trial court has wide discretion regarding the admissibility of extraneous evidence and may admit such evidence if the State makes a strong showing that the defendant committed the offenses and they are rationally related to the charged offense. *Story v. Collins*, 920 F.2d 1247, 1254 (5th Cir. 1991).   Here, the record reflects that before admitting this evidence, the court held a hearing, outside the presence of the jury, to determine the scope of the proposed testimony and its relatedness to the offense charged. This Court is unable to conclude the trial court erred in admitting this evidence.   Finally, Petitioner

4

fails to show that but for the admission of this testimony the result in the trial would have been different.  (T.T., Vol. 4 at168:61-174:24).  *Brecht*, 507 U.S. at 637.

In his sixth claim, Petitioner maintains that the trial court abused its discretion and denied him a fair trial by allowing an expert witness to appear on behalf of the State and testify about her opinion without "some established scientific facts or studies which were [relied] upon" (Pet'r Memo. at 5; 13).  Determining whether to allow an expert to testify on a particular issue is an evidentiary issue that is generally within the sound discretion of the trial court.  Tex. R. Crim. Evid. 705.  As such, this is not a matter that is cognizable in a federal writ of habeas corpus.  *Little v. Johnson*, 162 F.3d at 862.  Nevertheless, Petitioner's claim fails.  Under Texas law a person may testify as an expert, by knowledge, skill, experience, training, or education, if it is determined that she or he can bring some specialized insight or understanding to the courtroom to assist the trier of fact.  Tex. R. Crim. Evid. 702.  Moreover, an expert's opinion can be based on personal knowledge, presentation of information or data during the trial, or outside sources.  Tex. R. Crim. Evid. 703.  Therefore, as long as the person is qualified and the testimony will assist the trier of fact, Texas courts will generally permit expert testimony on a wide range of topics.  Tex. R. Crim. Evid. 702.  Here, prior to allowing the witness to testify, the trial court permitted the defense to conduct voir dire, outside the presence of the jury, to determine the witness' expertise.  Based on this hearing, the trial court determined that the witness qualified as an expert, but restricted her testimony to the limited issue of addressing whether it would be unusual, generally, for a victim of a sex crime to communicate with her accuser following the alleged incident.  Petitioner fails to establish that this evidentiary ruling was erroneous and, even if it was, that it was so extreme that it resulted in actual prejudice to him.  Further, Petitioner has failed to establish actual prejudice because of the trial court's ruling. *Brecht*, 507 U.S. at 637.

In his seventh claim, Petitioner contends that the trial court improperly "conducted an abundant amount of discussion with 'personalized opinion discussion' for a total of 8 pages [in the trial transcript] and bolstered the credibility of the State's expert witness.'" (Pet'r Memo. at 6-7; 13). Petitioner's contentions are unfounded. The record reflects that prior to the State introducing its evidence through expert testimony, defense counsel requested the trial court determine the qualifications of the expert witness. Tex. R. Crim. Evid. 702; *Kelley v. State*, 824 S.2d 568 (Tex.Crim.App. 1992). Accordingly, outside the presence of the jury, the court permitted a *voir dire* examination of the proposed expert to inquire into her qualifications and the basis of her opinion. During this time, the judge must determine if the witness is qualified and if a sufficient basis exists to allow the proposed testimony on a particular issue. Tex. R. Crim. Evid. 705. Here, the judge did so, and the "discussion" that Petitioner refers to in the transcript is nothing more than a reflection of this determination. In reviewing the transcript, this Court does not find the trial court's conduct to be inappropriate. More significantly, however, none of this "discussion" took place in the presence of the jury, therefore, Petitioner fails to establish any actual prejudice.

Petitioner next claims that the trial court abused its discretion by "overruling an objection to the agreed notice by court order." (Pet'r Memo. at 7-8). Based on his references to a portion of the transcript, Petitioner appears to take issue with the fact that the trial court overruled defense counsel's objections to the notice the State provided before calling its expert witness and the sole it called during the punishment phase of trial. (T.T., Vol. 7 at 80:10-24 & Vol. 8 at 4:4-25; 5:1-25). Petitioners claims are without merit. Initially, under Texas law a trial court may properly allow the State to bring a witness who was not previously included in its witness list if it is for the sole purpose of rebutting unforseen testimony. *Doyle v. State*, 875 S.W.2d 21, 22 (Tex.App.–Tyler 1994). Here, the court allowed the State to call this witness as it apparently found that the State

could not have anticipated the need for this witness until after the defense offered the letter the minor victim sent to Petitioner.  Furthermore, with regard to the State's notice of its punishment witness, the record reflects that the State, providing ample notice, did list this prospective witness on its witness list, but  did not then have her current address.  Once the State obtained the information it provided it to defense counsel.  The trial court allowed the testimony of this witness because it found that the State provided defense counsel enough information to put the defense on notice of who she was and how she might be contacted.

In his ninth and tenth claims, Petitioner maintains that the trial court abused its discretion and denied him a fair trial by permitting a telephone deposition of the custodian of the medical records  because the person was in Louisiana.  (Pet'r Memo. at 8).  Petitioner further claims that the court improperly permitted the business records clerk to interpret the medical records of a physical examination of the victim.  (Pet'r Memo. at 8-9).  Although this is an evidentiary matter which is generally not cognizable in seeking federal habeas relief, Petitioner's claims are completely without merit.  Texas law authorizes a trial court to permit a deposition of a person located outside the state.  Tex. Code Crim. Proc., art. 39.01.  Furthermore, the record reveals that the trial court permitted defense counsel to do so in order that he might use the Louisiana medical records, which would otherwise have been inadmissible, during the trial to defend Petitioner.  The telephonic deposition took place outside the presence of the jury, and only portions of the deposition, which did not include any speculation or interpretation by the custodian, were ultimately permitted to be presented to the jury.  Since there was no actual prejudice to Petitioner, his claims fail.

In his eleventh claim, Petitioner contends the trial judge abused its discretion by appointing his secretary's husband as the investigator for the defense.  (Pet'r Memo. at 9).  However, Petitioner makes no showing that the investigator did not do his job or in any way circumvented his defense.

As such, Petitioner fails to establish that it was improper for the court to do so.  Petitioner also fails to establish how any such decision impacted the verdict in his case.

Next, Petitioner contends the trial court erred in failing to admonish a witness, the investigator for the sheriff's department, for not fully complying with the subpoena because he failed to bring his file to court with him.  (Pet'r Memo. at 9).  This issue is not cognizable in a request for federal habeas relief.  *Little v. Johnson*, 162 F.3d at 862.  Nevertheless, even if cognizable, his claim fails.  Here, the witness testified that he receives numerous subpoenas and merely misunderstood the scope of this one.  The record also reflects that the defense was not prejudiced by this because it had the documents that were in the investigator's file and was able to refer him to those to refresh his recollection.

Finally, Petitioner contends the trial court denied him a fair proceeding and meaningful appeal process because the transcript of the trial was incomplete and hampered him on appeal and in his state writ.  (Pet'r Memo. at 10-12).  The record reflects that Petitioner wrote to the court reporter regarding his perception that the record was incomplete.  The court reporter responded to Petitioner by explaining the meaning of certain notations or punctuation in the transcript and assuring him that the record was, in fact, complete.  *Ex Parte Jones* at 81-84.  Although Petitioner points to places in the record where there are notations of "inaudible," the Court observes these instances are actually quite few and very limited in scope.  Furthermore, to the extent that Petitioner claims that the record is incomplete because it does not include the "off-the record" bench conferences, his claim is without merit because the parties may properly agree to discussions "off-the-record."  Nevertheless, Petitioner's claim is without merit because he fails to even suggest how any of these alleged deficiencies impacted or hindered his appeal or his state writ.

The Court therefore **RECOMMENDS** that the Petition be **DENIED** on all these issues.

8

B.  Claim Regarding Grand Jury Proceeding & Other Claims Against Prosecutor

Petitioner maintains the State prosecutor abused her discretion and denied him a fair and proper grand jury proceeding by permitting Brazoria County Sheriff Department, Investigator Eric Price to remain in the grand jury room throughout the questioning of Petitioner.  Petitioner claims this resulted in an unfair and biased grand jury tribunal in violation of article 20.04 of the Texas Code of Criminal Procedure 20.04 and Rule 6(d)(1) of the Federal Criminal Code and Rules.  (Pet'r Memo. at 14).

Petitioner appears to rely, in part, on the Federal Rules of Criminal Procedure to support his claim, but because Petitioner was not tried in federal court, any reliance on the Federal Rules is misplaced.  Instead, Petitioner was tried in state court where the state rules of criminal procedure apply.  Allegations regarding violations of state law generally do not form the proper basis of a federal writ of habeas corpus.  *Little v. Johnson*, 162 F.3d at 862.  Nevertheless, the Court finds no basis for Petitioner's allegations.  State statutory provisions expressly authorize the presence of witnesses "when necessary to assist the attorney representing the state in examining other witnesses or presenting evidence to the grand jury."  Tex.Code Crim. Proc. art. 20.011(a)(4).  Therefore, even assuming the investigator was present, the mere presence of this witness alone, is not improper. Furthermore, there are no allegations nor is there any evidence that the investigator was permitted to ask question during the grand jury proceedings.  Tex. Code Crim. Proc. art. 20.04.  Petitioner fails in this claim.

In addition to his claim regarding the grand jury proceedings, a review of his Memorandum reveals that Petitioner also asserts a number of less cogent claims of prosecutorial misconduct that he alleges denied him a fair trial.  (Pet'r Memo. at 14-19).  However, none of his additional claims possess merit.  First, Petitioner contends that the prosecutor intentionally elicited perjured testimony

from "the crime victim and her mother (Michelle Reed)." (Pet'r Memo. at 14). A prosecutor violates a criminal defendant's right to due process when he "knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected." *Goodwin v. Johnson*, 132 F.3d 162, 185 (5th Cir. 1997); *see also*, *United States v. Blackburn*, 9 F.3d 353, 357 (5th Cir. 1993), *cert. denied*, 513 U.S. 830 (1994) (setting forth three elements that must be established by a petitioner to support this claim). Here, the record does not support Petitioner's claim of perjury, much less a claim that the prosecutor in any way acted improperly or knowingly in presenting false testimony, nor does Petitioner offer any evidence that either witnesses' testimony was false. Because there is no evidence of perjury by either the victim or her mother, and there is no evidence that the prosecutor sought to elicit false testimony from her, an objection by defense counsel would have been unwarranted and, as such, Petitioner's claim fails.

Second, Petitioner claims that the Prosecutor, having a "personalized interest in the outcome of the trial," improperly traveled to Louisiana, engaged in investigative functions, and "coerced the witnesses to testify falsely and accuse the Petitioner of a sexual assault in another state." (Pet'r Memo. at 15). A prosecutor has a duty to fully investigate a case which includes interviewing witnesses. *Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir. 1980). Furthermore, there is also no evidence, either on the record or submitted by Petitioner, that supports his conclusory allegations that the Prosecutor coerced any witness to testify falsely. Petitioner's claims are without merit.

Third, Petitioner claims that during the punishment phase of the trial, the Prosecutor "ambushed" the Court, the defense, and the Jury and violated Rule 404(b) of the Texas Rules of Evidence by presenting evidence for which the prosecutor failed to give reasonable notice. (Pet'r Memo. at 16; T.T., Vol. 4 at 27:7-24; Vol. 8 at 4:10-25; 5:1-25; 6:1-22). The State only presented one witness during the punishment phase of the trial and this witness was Lisa Ann Bazzle. Defense

counsel objected to this witness because he claimed the State did not provide proper notice.  A review of the record reveals that well before the trial date the State did file its witness list, which included "Bobbi Leonard," who is Petitioner's ex-wife, and also included "Lisa Ann (daughter of Bobbi)."  (State Record ("S.R.") at 157-159).  Approximately two weeks before trial, the State then filed a Notice of Intent to Offer Extraneous Offenses and in the notice referred to "Lisa Ann; daughter of Bobbi Leonard when she was a minor child."  (S.R at 160).  Although the prosecutor did not then have any additional information to provide to defense counsel regarding Lisa Bazzle, the record reflects that she promptly communicated the information she learned prior to the commencement of trial and then filed an Amended Notice of Intent to Offer Extraneous Offense. (S.R at 178).  More significantly, however, the Petitioner actually knew this witness and he was provided sufficient information to locate her had he chosen.  Therefore, to the extent that Petitioner claims the State improperly withheld this information, his claim fails.  *Lawrence v. Lensing*, 42 F.3d 255, 257-58 (5th Cir. 1994).

Next, Petitioner claims that the prosecutor denied him a fair trial by requesting the trial court seal the "Texas Department of Child Protective Services Training Manual," which thereby denied him the right to review and effectively cross-examine or possibly impeach the trial testimony of the CPS interviewer, Lisa Holcomb.  (Pet'r Memo. at 17).  Petitioner also contends that the prosecutor denied him the opportunity to impeach the victim because the videotape, which the State provided notice that it would use, was not produced or used at trial, thereby, denying Petitioner the opportunity to impeach the victim with the videotape.  (Pet'r Memo. at 17).  The record does not support Petitioner's claims.  Instead, the record reflects that the trial court denied CPS's motion to quash defendant's subpoena and ordered the interviewer to attend the trial, bringing with her the videotape, her interview notes, and training manual.  (T.T., Vol. 2 at 3).  Based on the court's order,

the defense had access to the videotape.  Furthermore, the interviewer was called by the defense for its case in chief.  Petitioner's claims that the State denied him this evidence is without basis.[3]

Petitioner's last claim regarding the prosecutor is that he claims in her closing she improperly included facts that were not testified to by any witness (*i.e.*, "Mrs. Jones can't drive because she's hurt" and "Mrs. Early made accusations long before [the child] was ever born.") (Pet'r Memo. at 19; T.T., Vol. 7 at 141:4-6; 167:24-174:4-15).  The Texas Court has held that proper areas for closing argument include: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; and (4) pleas for law enforcement.  *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim.App. 1990).  Here, a review of the record reflects that the State was responding to opposing counsel and providing a summary of the evidence and a reasonable deduction from the evidence.  *See Kirkpatrick v. State*, 515 S.W.2d 289, 293 (Tex.Crim.App. 1974).  Accordingly, the Prosecutor's closing argument was not improper.

The Court therefore **RECOMMENDS** that the Petition be **DENIED** on all these issues.

C.  Claims of Ineffective Assistance of Trial Counsel

Petitioner claims that trial counsel, Stickler, rendered ineffective assistance because he: (1) failed to conduct an independent investigation; (2) failed to present exculpatory and impeachment evidence at trial which would have undercut the State's witnesses and bolstered Petitioner's credibility before the jury; (3) failed to present impeachment evidence on cross-examination of the State's only witness in the punishment phase of trial; (4) permitted the presentation of unadjudicated evidence at the punishment phase of trial; (5) failed to object to the State's *Brady* violations; and (6)

---

[3] To the extent that Petitioner is claiming that he was denied his right to confrontation, this claim would also fail.  Although a videotape was made of the victim's account of the crime, the victim testified at trial and was subject to cross-examination by the defense.  *Story v. Collins*, 920 F.2d at 1255.

failed to object that the investigator appointed to assist the defense was the trial court secretary's husband. (Pet'r Memo. at 19-24).

The Sixth Amendment to the Constitution provides criminal defendants a right to effective assistance of counsel.  U.S. CONST., Amend. VI.  To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner's failure to establish either prong of *Strickland* necessarily requires a finding that counsel's performance was constitutionally effective.  *Id.* at 687.

When determining whether counsel's performance was deficient, courts will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689; *see also, Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir. 1992), *cert. denied*, 59 U.S. 921 (1993) (a reviewing court must be highly deferential to the trial attorney's conduct and presume that assistance was reasonably effective).  A reviewing court must presume that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Strickland* at 690; *Amos v. Scott*, 61 F.3d 333, 347-48 (5th Cir. 1995).  There is a presumption that counsel's strategic decisions cannot amount to ineffectiveness.  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chose that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (quoting *Garland v. Magio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)).  Thus counsel will not be deemed ineffective for failing to advance a defensive theory when his decision "was a reasonable strategic choice based upon a reasonable professional assessment of the plausibility of the defense and its likelihood of success." *Moreno v. Estelle*, 717 F.2d 171, 177 (5th Cir. 1983), *cert. denied*, 466 U.S. 975 (1984).

13

When making the determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. *Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999). Furthermore, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland,* 466 U.S. at 691.

To establish prejudice, a petitioner must establish that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" means a probability sufficient to undermine the confidence in the outcome. *Id*. A petitioner must "affirmatively prove prejudice." *Id.* at 693. A petitioner cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir.), *cert. denied*, 506 U.S. 829 (1992). Furthermore, conclusory allegations are also insufficient. *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982), *cert. denied*, 461 U.S. 951 (1983); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Finally, when there has been an adjudication on the merits in state court, as there has been here, in order to grant habeas relief, a federal court must decide that the state court's application of the *Strickland* standard was "objectively unreasonable." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000). In doing so, the focus is on the state court's ultimate legal conclusion, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003).

As to Petitioner's specific contentions, he first claims that he received ineffective assistance of counsel because counsel failed to conduct an investigation. A review of the record, however, does not support Petitioner's charges. The Court observes that Petitioner was initially represented by Mr. Bass, but this attorney withdrew and Mr Stickler was appointed several weeks before trial.

14

Stickler received the work product, including all the investigations and evidence from the initial attorney. In addition, the record reflects that defense counsel did conduct his own investigation, contacted and interviewed witnesses, and prepared the case for trial.  Moreover, Petitioner fails to set forth what additional investigation should have been completed by counsel, what other witnesses were available or what they would have said, what specific additional possible defenses he should have been advised on, or why the outcome would have been different if his attorney had acted otherwise.  Petitioner also fails to establish that, even assuming counsel's conduct was deficient, he was prejudiced.  A mere allegation of prejudice is insufficient.  *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994), *cert. denied*, 514 U.S. 1071 (1995).

Second, Petitioner claims counsel failed to present exculpatory and impeachment evidence at trial which would have undercut the State's witnesses and bolstered Petitioner's credibility. However, contrary to Petitioner's claims, a review of the record reveals that trial counsel did in fact attempt to impeach the State's witness in the case.  For example, defense counsel called the case worker who interviewed the victim in an attempt to impeach the victim's testimony by showing how her story changed each time she told it.  (T.T., Vol. 7 at 65-69).  He offered into evidence the letters that the victim wrote the Petitioner following the alleged assault.  Counsel also elicited testimony from the investigating officer that called into question the thoroughness of the investigation conducted by the police department.  In cross-examination, counsel also attempted to impeach one of the State's witnesses who had testified that the Petitioner also assaulted her years before, by eliciting testimony from her that her statement to police was not consistent with her trial testimony. (T.T., Vol. 7 at 61-63; 76-77).  Petitioner has not established what more counsel should have done. Moreover, aside from his conclusory allegations, he fails to establish that, had counsel done anything differently, it would have altered the result.

Third, Petitioner contends that defense counsel was ineffective because he failed to impeach the State's witness during the punishment phase of the trial.  A court's scrutiny of an attorney's performance is generally highly deferential and a court will not second-guess the tactical decisions of trial counsel.  *Strickland*, 466 U.S. at 689.  Here, the record reflects counsel's apparent decision during the punishment phase was to offer witnesses on behalf of the Petitioner so that the jury might consider him for probation.  Although counsel was not successful in his strategy, this does not render him ineffective.  Furthermore, Petitioner also fails to demonstrate what more counsel could have done that would have altered the result.

Fourth, Petitioner claims that he received ineffective representation because trial counsel permitted the presentation of unadjudicated offenses at the punishment phase of trial.  To establish ineffective assistance for alleged errors in the punishment phase of trial, Petitioner must establish that a reasonable probability exists that but for trial counsel's errors, the sentence would have been significantly less harsh.  *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993).  A significantly less harsh sentence must be appreciable before relief is warranted.  *Id.* at 88, n. 4.  In deciding whether such prejudice occurred, a number of factors should be considered, such as: (1) whether the actual amount of sentence imposed on the defendant was by the judge or jury; (2) the minimum and maximum sentences possible; (3) the relative placement of the sentence actually imposed within that range; and (4) the various relevant mitigating and aggravating factors that were properly considered by the sentencer.  *Id.* at 88-89.  Under Texas law, the range of punishment for a conviction for aggravated sexual assault of a child is life or any term not more than 99 years or less than 5 years.  Tex. Penal Code § 12.32.  Here, Petitioner received a fifteen-year sentence for aggravated sexual assault of a child and a ten-year sentence, which was probated, for indecency with a child.  Therefore, even assuming arguendo that counsel's performance was in some way deficient,

16

Petitioner fails to establish that there was a reasonable probability that, but for any error, that his sentence would have been significantly less harsh. *Spriggs v. Collins*, 993 F.2d at 88. Mere speculation on his part as to a different outcome will not suffice. *Schlang v. Heard*, 691 F.2d at 799.

Fifth, Petitioner maintains that counsel failed to object to the *Brady* violation. Under *Brady*, the prosecution is not permitted to suppress evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A petitioner seeking habeas relief based on an alleged *Brady* violation must establish that "(1) the prosecution withheld evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). However, a defendant cannot prevail on a claim that evidence was suppressed if he either knew or should have known about the essential facts permitting him to take advantage of any exculpatory evidence. *Lawrence v. Lensing,* 42 F.3d at 257-58. Contrary to his contentions, no evidence was suppressed in this case because the defense was aware of the medical records and had the ability to follow-up with the clinic and obtain additional information regarding the doctor, what the records stated, and the doctor's impressions. Accordingly Petitioner fails to state a claim for a *Brady* violation.

Finally, Petitioner contends that counsel failed to object to the court's appointment of the investigator. In its Answer, the State maintains that Petitioner procedurally defaulted on this claim. Petitioner counters in his Response that he did, in fact, raise this in his state writ. After a careful review of the state records, the Court finds only a very vague reference to the appointment of this investigator, which suggests dissatisfaction, but only by a strained interpretation could one conclude, that he was alleging counsel was ineffective for failing to object to this appointment. *See Ex parte*

*Jones*, 54,894-01 at 32.  Inasmuch as he did not previously raise this issue, the Court agrees with the State that there has been a procedural default of this claim. However, even assuming he previously stated such a claim, this claim fails.  Petitioner does not contend that the investigator acted inappropriately nor does he claim that the investigator did not adequately complete the work he was requested to perform.  Furthermore, his conclusory statements of prejudice will not suffice.  Petitioner not only fails to establish that defense counsel's conduct was deficient for failing to object, but also fails to establish any prejudice.

The Court therefore **RECOMMENDS** that the Petition be **DENIED** on all these issues.

D.   Claims of Ineffective Assistance of Appellate Counsel

Petitioner contends he received ineffective assistance of appellate counsel because counsel (1) failed to fully review and evaluate the record and then present the "obvious critical issues" he subsequently presented in his state and federal writs; and (2) delayed in informing him of the appellate court ruling and the time period to file a PDR.  (Pet'r Memo. at 23; 24-26).  Petitioner's claims are without merit.

In order to establish a claim for ineffective assistance of appellate counsel, Petitioner must establish that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by it.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying standard set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Appellate counsel, Kelly McClendon, filed an appeal on behalf of Petitioner.  Petitioner contends that appellate counsel erred in failing to appeal the issues he raises in both his state and federal writs.  Petitioner has no constitutional right "to compel appointed counsel to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Moreover, appellate counsel

18

is not required to raise baseless or unwarranted issues on appeal. *See Smith v. Robbins*, 528 U.S. 259, 278 (2000). For example, the record reflects that Petitioner urged appellate counsel to appeal the issue that he was denied a fair grand jury proceeding and counsel explained to him in writing that she believed any such claim would be frivolous and, therefore, did not raise this as an issue. *See Ex Parte Jones* at 65-66. Petitioner's claims that had appellate counsel raised these issues he "might well have won an acquittal" or a new trial (Pet'r Memo. at 25), are nothing more than speculation and such conclusory statements are simply not sufficient to establish prejudice. *Schlang v. Heard*, 691 F.2d at 799. Petitioner's claim is without merit.

Petitioner also contends that appellate counsel was ineffective for failing to inform him of the appellate court ruling and the time period for filing a PDR with the Texas Court of Criminal Appeals. His claim fails. Appellate counsel informed Petitioner in writing that it was her professional opinion that there was no legitimate basis for filing the PDR and that she did not intend to file one on his behalf because she was precluded by ethical rules from filing a frivolous pleading with the court. *Ex Parte Jones* at 90. However, appellate counsel specifically instructed Petitioner how to proceed if he chose to pursue the PDR on his own behalf. *Id.* The record clearly reflects that Petitioner then requested and obtained an extension to file the PDR. He also filed the petition in a timely manner. Therefore, even assuming arguendo that there was any delay, Petitioner was not prejudiced because he was still able to file the PDR. The mere fact that the Texas court denied him relief will not support his claim against appellate counsel.

The Court therefore **RECOMMENDS** that the Petition be **DENIED** on all these issues.

### Conclusion

For all the reasons stated herein, the Court **RECOMMENDS** the Petition for a Writ of Habeas Corpus of Edward Marion Jones (Instrument No. 10) be **DISMISSED**.

19

The Clerk shall send copies of this Report and Recommendation to the Plaintiff by the means in place for transmission of same.  Plaintiff shall have until **August 15, 2006,** in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk.  The Objections shall be mailed to the Clerk's Office in Galveston, Texas 77553 at P.O. Drawer 2300.  **Any Objections filed shall be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration.  Failure to file written objections within the prescribed time shall bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____1st_____ day of August, 2006.

_____
John R. Froeschner
United States Magistrate Judge

20